Leroy JACKSON, et al., Plaintiffs,

v.

**CITY COUNCIL OF AUGUSTA, GEORGIA and City of Augusta, Georgia, Defendants.**

Civ. A. No. CV190–286.

United States District Court,
S.D. Georgia,
Augusta Division.

Nov. 30, 1993.

Mark Louis Wilhelmi, Augusta, GA, Charles Leslie Wilkinson, III, Augusta, GA, for plaintiffs.

Ziva Peleg Bruckner, Paul Hammond Dunbar, III, Capers, Dunbar, Sanders, Bruckner & Clarke, Augusta, GA, for defendants.

## ORDER

BOWEN, District Judge.

Plaintiffs and Defendants move for summary judgment in the captioned case. For the reasons stated below, Defendants' Motion for Summary Judgment is **GRANTED**; Plaintiffs' Motion for Summary Judgment is **DENIED**.

## I. BACKGROUND

Plaintiffs are firemen currently or formerly employed at the Augusta Fire Department by Defendant City of Augusta, Georgia (the City), an incorporated municipality in Richmond County, Georgia. Defendant City Council of Augusta, Georgia, is the City's governing body. Plaintiffs brought this lawsuit against Defendants alleging noncompliance with the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq. Specifically, Plaintiffs contend the City's hourly wage scheme does not meet the FLSA's overtime requirements. Additionally, Plaintiffs contend their "on-call" time as fire fighters is compensable working time under the FLSA.

The essential facts are not disputed. Prior to July 1, 1985, Plaintiffs received no overtime compensation; they were paid a fixed annual salary in bi-weekly installments, regardless of the actual number of hours worked. Plaintiffs worked (and continue to work) considerable overtime by most standards—approximately 3120 total working hours per year, an average of 60 hours

worked per week. Following the Supreme Court's decision in *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985) on April 15, 1985, making the FLSA applicable to state and local governments, the City implemented a new, hourly-based wage scheme, effective July 1, 1985, designed to comply with the FLSA.[1] The City admits that its new compensation system was designed to accord with the FLSA's overtime requirements without increasing payroll costs. In converting from fixed salaries to an hourly wage system that properly compensates overtime hours under the FLSA, the City determined precisely what hourly wage for each fireman would produce the same annual salary paid him under the former system, with overtime paid at the required overtime rate. Since the FLSA requires that overtime hours (those worked over forty in a workweek) be paid at a rate 50% higher than the non-overtime or "straight time" rate, *see* 29 U.S.C. § 207(a)(1), the City simply increased by 50% (for computation purposes only) the total number of hours worked per annum, then divided each fire fighter's projected annual salary by the artificially inflated hours worked, 3640, to arrive at the desired hourly wage.[2]

Under the new pay system, the City's "pay schedule" reflects projected annual, monthly, bi-weekly and weekly compensation for all firemen, by title. A fireman's hourly wage rate is established by dividing his projected

---

1. The FLSA as originally enacted in 1938 did not apply to state and local governments. Its requirements, overtime and otherwise, did not affect municipalities like the City of Augusta. In 1974 Congress extended the FLSA to state and local governments. However, in *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), the Supreme Court held that Congress lacked authority to impose FLSA requirements on state and local governments performing traditional government functions, such as fire protection. Nine years later, the high Court reversed itself in *Garcia*, holding

the FLSA can be imposed on state and local governments even when performing traditional government functions. 469 U.S. 528, 105 S.Ct. 1005. On November 14, 1985, however, Congress enacted several amendments to the FLSA, including one which postponed the effective date of the FLSA's application to state and local governments until April 15, 1986. Federal Labor Standards Amendments of 1985, Pub.L. No. 99–150, § 2(c), 1985 U.S.Code Cong. & Admin.News (99 Stat.) 787, 788.

2. The number 3,640 is determined as follows:

| Hours | | |
|---|---|---|
| 3,120 | – | Estimated annual straight time plus overtime |
| (1,040) | – | Estimated annual overtime |
| 2,080 | – | Estimated annual straight time |
| + 1,560 | – | 1.5 × 1,040 estimated annual overtime |
| 3,640 | | |

annual compensation from the pay schedule by 3,640. The City maintains records of the hours worked by each fireman. At the end of each bi-weekly pay period, the number of straight time and overtime hours worked is submitted to a payroll clerk. The payroll clerk enters into a computer the number of hours actually worked, and the payroll computer automatically multiplies the number of straight time hours by the hourly wage rate and the number of overtime hours by the overtime rate. Pay stubs distinguish straight and overtime compensation.

This lawsuit also concerns Plaintiffs' "on-call" time as fire fighters, which the City currently does not compensate. The Augusta Fire Department's employee manual requires that all firemen be available at all times, even when off duty, to respond to a general alarm within thirty to forty minutes of being summoned. The firemen receive no compensation for their time off duty unless they are called and respond to a general alarm. If a fireman fails to timely respond to a general alarm, he loses one day's pay. There are no restrictions on what a fireman can do when off duty. He may, for example, hold a second job, recreate in any manner, cook, entertain, visit friends, or do any thing else he enjoys doing or needs to do. Several of the City's fire fighters reside in locations too far from Augusta to respond to a general alarm within the required time. Most of the City's fire fighters hold a second job, and some have jobs that take them away from the Augusta area on a regular basis, rendering impossible their timely response to a general alarm. Since 1985 there have been two general alarms, both of which occurred in 1987.

Plaintiffs filed this lawsuit on December 11, 1990, seeking to recover, among other things, alleged unpaid overtime and compensation for on-call time.[3] Defendants dispute

Plaintiffs' allegations of noncompliance with the FLSA. Both sides contend they are entitled to prevail on the undisputed facts as a matter of law.

## II. ANALYSIS

### A. *Requirements for summary judgment*

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The applicable substantive law identifies which facts are material in the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

"The movant bears the initial burden to show, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). When the *moving* party has the burden of proof at trial, that party must carry its burden at summary judgment by presenting evidence affirmatively showing that, "on all the essential elements of its case . . ., no reasonable jury could find for the non-moving party." *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1438 (11th Cir.1991) (en banc). When the *non-moving* party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the non-moving party's claim or by pointing to specific portions of the record which demonstrate that the non-moving party cannot meet its burden of proof at trial, *see Clark,* 929 F.2d at 606–608 (explaining *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91

---

**3.** By Order dated January 30, 1992, this Court determined Plaintiffs' claims are time barred under 29 U.S.C. § 255(a), granted Defendants' previous Motion for Summary Judgment, and dismissed this case. For reasons best known to them, Defendants joined in a Motion for Reconsideration of the January 30 Order, stating that Defendants' Motion for Summary Judgment was intended to address only Plaintiffs' retaliation claim under "Section 8" (29 U.S.C. § 215). The joint Motion for Reconsideration was granted by Order dated July 14, 1992, and the parties were permitted to proceed on the remaining issues. (*See* Order dated Jan. 30, 1992, at 2). As the parties have represented that the overtime and on-call issues are all that remain for the Court's consideration, any other claims or grounds of recovery previously asserted by the Plaintiffs are considered abandoned.

L.Ed.2d 265 (1986)); merely *stating* that the non-moving party cannot meet its burden at trial is *not* sufficient, *Clark,* 929 F.2d at 608. Any evidence presented by the movant must be viewed in the light most favorable to the non-moving party. *Adickes,* 398 U.S. at 157, 90 S.Ct. at 1608.

If—and *only* if—the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark,* 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. *Morris v. Ross,* 663 F.2d 1032, 1033–34 (11th Cir.1981), *cert. denied,* 456 U.S. 1010, 102 S.Ct. 2303, 73 L.Ed.2d 1306 (1982). Rather, the non-moving party must respond by affidavits or as otherwise provided in Fed.R.Civ.P. 56. "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513. A genuine issue of material fact will be said to exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248, 106 S.Ct. at 2510.

The clerk has given the non-moving party notice of the summary judgment motion, the right to file affidavits or other materials in opposition, and of the consequences of default; thus, the notice requirements of *Griffith v. Wainwright,* 772 F.2d 822 (11th Cir. 1985), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration. The Court will proceed to review the applicable substantive law and inquire whether the moving party—and, if necessary, the non-moving party—has carried its burden as set forth above. *See Clark,* 929 F.2d at 609 n. 9.

**B. Summary Judgment in the Present Case**

The parties' summary judgment arguments are easily summarized: Defendants contend the City's new hourly wage scheme complies with the FLSA's overtime requirements; Plaintiffs argue that the use of a "deflated" hourly rate to compute overtime compensation is improper under the FLSA because such rate is not based on the actual number of hours worked during the subject pay period. Regarding on-call time, Defendants contend Plaintiffs are not working when on-call and thus are not entitled to compensation for this time under the FLSA. Plaintiffs do not address the issue of on-call compensation in their briefs.

**1. Overtime**

■ Under the FLSA, hours worked in excess of forty in a workweek must be compensated at one and one-half times the "regular rate" of pay. 29 U.S.C. 207(a)(1).[4] Plaintiffs contend the "regular rate" from which the City computes their overtime compensation is unlawful under the FLSA because it is derived from an artificially inflated number of hours worked per annum. Although the FLSA does not prescribe a method of calculating the "regular rate,"[5] the Supreme Court has held that "the regular rate refers to the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." *Walling v. Youngerman–Reynolds Hardwood Co.,* 325 U.S. 419, 424, 65 S.Ct. 1242, 1245, 89 L.Ed. 1705 (1945). *See also* 29 C.F.R. § 778.108 (adopting the *Walling* definition of

---

**4.** The FLSA provides in relevant part:

Except as otherwise provided in this section [207], no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). The FLSA permits an alternative method of counting hours for overtime purposes with respect to trades like fire fighting, which are not always conducive to the workweek method of wage and time calculations. 29 U.S.C. § 207(k). The City opted not to utilize the subsection (k) computation.

**5.** "Regular rate" is "defined" at 29 U.S.C. § 207(e). However, subsection (e) merely lists forms of remuneration included in the "regular rate," without providing any formula for its computation.

"regular rate"). Plaintiffs recognize that the City purports to pay them a regular hourly rate for normal, non-overtime working hours, but argue that the City cannot lawfully reduce their hourly wage (from what it would be if their projected annual salaries are divided by actual hours worked) in establishing a "regular rate" for the purpose of complying with the FLSA. In support of this contention, Plaintiffs erroneously rely on *Wethington v. City of Montgomery*, 935 F.2d 222 (11th Cir.1991), which controls this case but requires a decision for Defendants.

In *Wethington*, the City of Montgomery devised an hourly wage plan for its fire fighters after learning of the *Garcia* decision. Prior to *Garcia*, Montgomery's firemen were paid on a straight salary basis with no overtime. To avoid additional payroll costs, the City inflated the number of hours worked during the subject pay period for the purpose of computing the firemen's "regular rate" of compensation. The new pay system took effect in June 1985, after *Garcia*, but prior to the effective date (April 15, 1986) of the FLSA's application to municipalities under the congressional amendments (*see* note 1, *supra*). The Eleventh Circuit held that Montgomery's new wage system complied with the FLSA because it properly considered actual hours worked and properly recognized the first forty hours as regular hours. *Id.* at 226–30.

In *Wethington*, the Eleventh Circuit rejected the firemen's argument that Montgomery's innovative "regular rate" of compensation rendered the new wage scheme invalid under the FLSA, stating "[t]his contention ... blurs the difference between the City's initial calculation of the regular hourly rate and the *ongoing* calculation of the regu-

lar rate." *Id.* at 227 (emphasis added). Because the new system was implemented (in June 1985) *prior* to the FLSA's application to municipalities (April 15, 1986), the City of Montgomery was not required to base the fire fighters' regular wage rate on their actual hours worked during the pay period as otherwise required by Department of Labor regulations. *Id.* at 227–28. *See* 29 C.F.R. § 778.113(b).[6] The Court stated:

> If the [FLSA] had applied at the time the City was paying the fire fighters under the old salary system, the [FLSA] would have required that the regular rate be calculated using the pay rate and hours worked under that system. As the Department of Labor has stated, the regular rate in a salaried system is determined by converting the pay to its hourly equivalent. 29 C.F.R. § 778.113(b). Had the [FLSA] applied at that time, that is, had it applied upon issuance of the *Garcia* mandate, this salary conversion would have produced a regular rate higher than that adopted by the City. In addition, the calculation of the regular rate would have had to comport with the actual hour requirement, and thus the fictional increase of overtime hours would not have been permitted.

> . . . . .

> This case, however, does not present an issue of whether the [FLSA] barred the calculation of the regular rate based on artificial hours, because here Congress delayed application of the [FLSA] until April 15, 1986, ten months after the calculation took place. The City was not under any regular rate obligation in 1985, and the salary system did not have to comport with any hourly conversion under the Department of Labor's regulations. Because the

---

**6.** 29 C.F.R. § 778.113(b) provides:

Where the salary covers a period longer than a workweek, such as a month, it must be reduced to its workweek equivalent. A monthly salary is subject to translation to its equivalent weekly wage by multiplying by 12 (the number of months) and dividing by 52 (the number of weeks). A semimonthly salary is translated into its equivalent weekly wage by multiplying by 24 and dividing by 52. Once the weekly wage is arrived at, the regular hourly rate of pay will be calculated as indicated above. The regular rate of an employee who is paid a

regular monthly salary of $1,040, or a regular semimonthly salary of $520 for 40 hours a week, is thus found to be $6 per hour. Under regulations of the Administrator, pursuant to the authority given him in section 7(g)(3) of the Act, the parties may provide that the regular rates shall be determined by dividing the monthly salary by the number of working days in the month and then by the number of hours of the normal or regular workday. Of course, the resultant wage in such a case must not be less than the statutory minimum wage.

calculation occurred prior to the [FLSA'S] effective date, the [fire fighters] cannot argue that the [FLSA] governs those calculations.

*Id.* at 227–28 (footnote omitted). *Accord Anderson v. City of Bristol, Tenn.,* 6 F.3d 1168 (6th Cir.1993).

In the case *sub judice,* the City of Augusta's method of calculating Plaintiffs' regular hourly rate of compensation was effective July 1, 1985, prior to the effective date of the FLSA's application to the City.[7] The City's unilateral reduction of Plaintiffs' hourly wage is not proscribed by the FLSA. *Wethington,* 935 F.2d at 228; *Anderson,* 6 F.3d at 1172. "[The FLSA] does not prohibit changes in wage rates; it prohibits payment of overtime at less than one and one-half times the regular wage rate. Therefore, the reduction in wage rate did not violate the overtime provisions because the fire fighters received the overtime pay due them." *Anderson,* 6 F.3d at 1173. *Accord Wethington,* 935 F.2d at 226. Had the City of Augusta failed to compensate Plaintiffs at one and one-half times their regular hourly rate of compensation, it would have violated the FLSA. *Anderson,* 6 F.3d at 1171. However, "the fire fighters are paid more than the minimum wage and receive one and one-half times their hourly rate for overtime." *Wethington,* 935 F.2d at 226. Thus, the City's compensation scheme complies with the FLSA's overtime requirements.

**2. On-call time**

An employee's time spent waiting for his or her employer's call to duty may be compensable under the FLSA, depending on the facts and circumstances of each case. *Armour & Co. v. Wantock,* 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118 (1944). Whether on-call time is compensable as work under the FLSA turns on the "degree to which the employee may use the time for personal activities." *Birdwell v. City of Gadsden, Ala.,* 970 F.2d 802, 807 (11th Cir.1992). *See also*

*Halferty v. Pulse Drug Co., Inc.,* 864 F.2d 1185, 1189 (5th Cir.1989) (critical factor is "whether the employee can use the time effectively for his or her own purposes"). Time waiting to be engaged must be spent predominantly for the employer's benefit to be considered compensable working time. *Birdwell,* 970 F.2d at 807. Under Department of Labor regulations,

[a]n employee who is not required to remain on the employer's premises but is merely required to leave word at home or with company officials where he or she may be reached is not working while on call. Time spent at home on call may or may not be compensable *depending on whether the restrictions placed on the employee preclude using the time for personal pursuits.* Where, for example, a firefighter has returned home after the shift, with the understanding that he or she is expected to return to work in the event of an emergency in the night, such time spent at home is normally not compensable. On the other hand, where the conditions placed on the employee's activities are so restrictive that the employee cannot use the time effectively for personal pursuits, such time spent on call is compensable.

29 C.F.R. § 553.221(d) (emphasis added). "Whether a certain set of facts and circumstances constitute work for purposes of the FLSA is a question of law." *Birdwell,* 970 F.2d at 807. *See also Bright v. Houston Northwest Med. Center Survivor, Inc.,* 934 F.2d 671 (5th Cir.1991).

Although Plaintiffs are constantly "on-call" when off duty inasmuch as they must respond to a general alarm, their use of their off-duty time is not restricted in any way. Plaintiffs are at their leisure when off duty; they can and do enjoy full personal use of this time, in spite of the potentiality of a general alarm. They are not required to remain on the Augusta Fire Department's

---

7. The Court notes that in reviewing the facts of this case in a prior Order, the Court observed that the City's new wage scheme was implemented on October 15, 1985, relying on Defendants' representation in their "Brief in Support of De-

fendants' Motion for Summary Judgment" filed May 7, 1991. (Order dated Jan. 30, 1992 at 1–2). Although this discrepancy is noted, it is inconsequential since either date preceded the effective date of the FLSA's application, April 15, 1986.

premises, nor are they subject to any restrictions on where they may reside. They are not even required to leave word at home or the fire station where they may be reached, nor are they required to wear a beeper. When off-duty they can work at a second job, hunt, fish, cook, entertain, or anything else they desire. If called upon to respond to a general alarm, they are given a fairly liberal response time of thirty to forty minutes. Moreover, and of especial significance, general alarms are rare. There have been no general alarms for approximately the last six years. *Compare Renfro v. City of Emporia,* 948 F.2d 1529, 1535 (10th Cir.1991) (fire fighters had to be able to report to stationhouse within twenty minutes of being paged or be subject to discipline; fire fighters received three to five calls per on-call period; it was difficult, if not impossible, for the fire fighters to work in other employment while on-call; and fire fighters could not use their on-call time for personal pursuits). As "an employee's free time must be *severely* restricted for off-time to be construed as work time for purposes of the FLSA," *Birdwell,* 970 F.2d at 810 (emphasis added), Plaintiffs' unrestricted off-duty time is not compensable under the FLSA as a matter of law.

Accordingly, Defendants' Motion for Summary Judgment is **GRANTED;** Plaintiffs' Motion for Summary Judgment is **DENIED.** The case is **DISMISSED.** The Clerk is directed to enter Judgment for the Defendants, tax costs against the Plaintiffs, and **CLOSE** this case.

ORDER ENTERED.