Harmon ANDERSON, et al.,
Plaintiffs–Appellees,

v.

CITY OF BRISTOL, TENNESSEE,
Defendant–Appellant.

No. 92–5437.

United States Court of Appeals,
Sixth Circuit.

Argued March 9, 1993.

Decided Oct. 13, 1993.

Gregory K. McGillivary (argued and briefed), Washington, DC, A.D. Jones, Jr., Watson, Tipton & Jones, Bristol, TN, for plaintiffs-appellees.

Douglas S. Tweed (argued and briefed), Hunter, Smith & Davis, Kingsport, TN, for defendant-appellant.

Before: BOGGS and BATCHELDER, Circuit Judges, and MANOS, Senior District Judge.*

BATCHELDER, Circuit Judge.

This case involves the appeal by the City of Bristol, Tennessee, (the City) from the district court's granting of partial summary judgment to a group of City fire fighters who claim that the City violated the Fair Labor Standards Act (FLSA). The fire fighters

* The Honorable John M. Manos, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

claim that the City violated both section 7 and section 8 of the Fair Labor Standards Act (FLSA) in recomputing the hourly wage rate for the City fire fighters in response to the Supreme Court's holding that the FLSA's overtime provisions apply to state and local governments. We reverse the district court and hold that the City did not violate either section 7 or section 8 of the FLSA, and, in any event, plaintiffs' claims are time-barred.

## I.

Before 1985, the fire fighters for the defendant City of Bristol were scheduled to work 112 hours biweekly, all paid at a regular rate. In February, 1985, the Supreme Court decided *Garcia v. San Antonio Metro. Transit Co.*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), which held that the FLSA's overtime provisions apply to state and local governments. As a result of that decision, the City was required to pay the fire fighters 106 hours as regular time and six hours as overtime. In July of 1985, the City implemented hourly wage rate recalculations for regular and overtime pay so that its yearly salary budget for fire fighters would be unaffected by the FLSA overtime requirements. The City accomplished this by dividing the fire fighters' previous biweekly compensation by 115 hours rather than 112, accounting for the average of 112 biweekly hours worked plus one-half hour for each of the six overtime hours regularly scheduled during the biweekly period. By using the 115 divisor, the City reduced the fire fighters' hourly rate, allowing it to comply with the overtime requirements of the FLSA and still maintain the same biweekly salary compensation and budget for the fire fighters as under the old system.

Plaintiffs, all employed or formerly employed as fire fighters for the City of Bristol, filed suit against the City on September 26, 1990, in federal court, seeking monetary, declaratory and injunctive relief for violations of section 7, 29 U.S.C. § 207(a)(1), and section 8, 29 U.S.C. § 215 note, of the FLSA. Plaintiffs eventually filed a First, and then a Second Amended Complaint, claiming in Count I that the City's adjustment of its pay

plan was in response to plaintiffs' assertions of coverage under the FLSA; that the adjustment in pay was retaliatory in violation of section 8, 29 U.S.C.A. § 215 note; and that the adjustment resulted in a reduced increase and a unilateral reduction in their rate of compensation and constituted continuing retaliatory and discriminatory action in violation of section 8 and section 7, 29 U.S.C.A. § 207. The Second Amended Complaint contained two additional counts, not at issue in this appeal.

Plaintiffs and the City both filed motions for partial summary judgment. The City argued that Count I at best alleged violation of section 8 (retaliation), did not allege a violation of section 7's overtime provisions, and was time-barred because the action complained of constituted a discrete act in 1985 and was not a continuing violation. The City denied retaliatory intent and sought summary judgment as to the claims of plaintiffs who were not employed at the time of the 1985 calculations. The City neither sought nor opposed summary judgment on Counts II and III.

On October 28, 1991, the district court granted plaintiffs' motion for partial summary judgment and denied defendant's motion. The court found that Count I was not time-barred because the recomputation of hourly rates in 1985 had a continuing effect and reoccurred with every paycheck; that the 1985 calculations were in violation of the retaliation provisions in section 8 of the FLSA and of the overtime provisions in section 7 of the FLSA; and that, because of the continuing violation, plaintiffs hired after the 1985 calculations were entitled to relief as well. The court further found that the City had committed a willful violation, and liquidated damages should be awarded from the date when the City became aware of the Sixth Circuit's ruling in *Blanton v. City of Murfreesboro*, 856 F.2d 731 (6th Cir.1988), which would have put defendant on notice of the impropriety of the recalculations. The court permitted the parties a brief period of time within which to submit an agreed order stipulating the amount of damages to be awarded, and on February 27, 1992, entered judgment against the City and a final order

awarding damages. From that final order the City appeals.

## II.

Count I of plaintiffs' Second Amended Complaint alleges violations of section 7 and section 8 of the FLSA. Section 7 of the FLSA states:

(a)(1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed; ...

29 U.S.C. § 207(a)(1) [section 7]. The Supreme Court in *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), had held that the FLSA did not apply to state and municipal employees. The Court reversed its position on February 19, 1985, in *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), and held that the FLSA's overtime and minimum-wage provisions applied to all state and municipal employees engaged in "traditional governmental functions." Thus, the FLSA then covered the City's fire fighters.

On November 14, 1985, Congress enacted a number of amendments to the FLSA, one of which gave municipalities a temporary reprieve from the FLSA's requirements by postponing the effective date of implementation until April 15, 1986. Another of the amendments was section 8, which prohibited discrimination by governments against employees now entitled to the FLSA's overtime premium. That amendment provided:

A public agency which is a State, political subdivision of a State, or an interstate governmental agency and which discriminates or has discriminated against an employee with respect to the employee's wages or other terms or conditions of employment because on or after February 19, 1985, the employee asserted coverage under section 7 of the Fair Labor Standards Act of 1938 shall be held to have violated section 15(a)(3) of such Act. The protection against discrimination afforded by the preceding sentence shall be available after August 1, 1986, only for an employee who takes an action prescribed in section 15(a)(3) of such Act ...

29 U.S.C. § 215 note [section 8]. Thus, this anti-discrimination clause only applied until August 1, 1986, except that the clause continued to apply after that date to an employee who acted under section 15(a)(3) of the FLSA by filing a complaint or by instituting a proceeding concerning an FLSA violation. *See* 29 U.S.C. § 215(a)(3) [section 15(a)(3)].

The City of Bristol recalculated the fire fighters' wage rate in July of 1985. Although this action was post-*Garcia* and before the congressional amendment noted above, Congress applied its amendment retroactively, and therefore *Garcia*'s holding on the applicability of the FLSA's overtime provisions to state and local governments does not apply to the City's action of July 1985. The City's recalculation also was before the section 8 anti-discrimination provision was enacted.

## A.

We hold first that the district court erred in finding that the City committed a section 8 violation. As noted earlier, section 8 prohibits discrimination against an employee in wages, terms or conditions of employment because the employee asserted coverage under the FLSA. 29 U.S.C. § 215 note. This Court addressed a section 8 issue in *Blanton v. City of Murfreesboro*, 856 F.2d 731 (6th Cir.1988), a case in which the City of Murfreesboro, shortly after the Supreme Court's ruling in *Garcia*, excluded meal times from compensable hours for its fire fighters. Months later, 85 fire fighters stated that they had selected a union to discuss an agreement about the use of compensatory time in lieu of overtime pay. Then, in the first three days of the FLSA's application to state and local governments, the fire fighters objected in writing to the exclusion of meal time as compensable time. In response, the city in-

formed the fire fighters that their objection necessitated a change in their hourly rate so that the city could operate within its budget, and reduced their wage rate to take into account the fact that the inclusion of meal time pushed the compensable hours worked into overtime compensation under the FLSA. *Id.* at 733. The fire fighters immediately sued, alleging that the city violated section 8 by reducing fire fighters' wages because of their asserting coverage under the FLSA.

The *Blanton* court held that the language of section 8 was not clear and unambiguous, and that the meaning of the phrase *"because . . . the employee asserted coverage under section 7"* could not be discerned without resort to legislative history. *Id.* at 734 (emphasis added). After reviewing several pieces of that history, including the Joint Explanatory Statement of the Committee of Conference, House Conference Report No. 99-357, at 8-9, *reprinted in* 1985 U.S.Code Cong. & Admin.News 651, 670, which explains the scope of section 8; the remarks of Representative Hawkins, Chairman of the Joint Committee of Conference, 131 Cong. Rec. H9916 (Nov. 7, 1985); and a 1986 memorandum of the Department of Labor analyzing the legislative history of section 8, the court concluded that employees need not prove intent to discriminate or retaliate to make out a section 8 violation. It held that an employer has a defense to a unilateral reduction in wage rates "only if the employer can prove that employee wages were reduced out of fiscal concerns not attributable to extending the Act's coverage to municipal employees. Public employers may not take such steps, however, solely and directly in response to the extension of the Act's coverage." *Id.* at 735. Thus, the court held that the city had violated section 8 by reducing wages to nullify the effect of extending the FLSA's coverage. *Id.* at 736.

This case differs from *Blanton* in two important respects. First, the City of Bristol recalculated the wage rates of its fire fight-

ers prior to the enactment of the amendments to the FLSA, including section 8. Second, the City's action was not taken in response to any assertion of coverage by the fire fighters, since there is no evidence in the record that the fire fighters made any assertion of coverage at any time prior to their filing suit in 1990.

The City here asks that we supplement *Blanton* with the reasoning of the Fifth Circuit in *York v. City of Wichita Falls,* Texas, 944 F.2d 236 (5th Cir.1991). In that case, the city learned of *Garcia* when the Battalion Chief showed the Fire Chief a memo discussing *Garcia* and inquired whether the fire fighters were entitled to overtime pay under the case. On May 24, 1985, more than five months before the FLSA amendments were enacted, the city reduced the fire fighters' hourly wage rates to offset the increased costs which would result from paying compensation at overtime rates for overtime hours that were part of the fire fighters' regular work schedules. The fire fighters brought suit, alleging that the wage-rate reduction was in response to their assertion of coverage under FLSA. The *York* court distinguished *Blanton,* where the reduction in wage rates had taken place several months after section 8 was enacted, and held that,

> To prove that pre-enactment actions violated § 8, a plaintiff must show that (1) he or she is an employee covered by the act, (2) he or she asserted coverage under the FLSA on or after February 19, 1985, and (3) the state or local governmental employer's action was intended to discriminate because of the assertion of coverage.

*Id.* at 239.

Of particular importance to us in reviewing the apparent inconsistencies between *Blanton* and *York* is the discussion by the Fifth Circuit of the same memorandum of the Department of Labor relied on by the *Blanton* court:[1]

---

1. The *Blanton* court cited this memorandum in response to the city's citation of a letter from a former Solicitor of Labor. The court found the letter unpersuasive, noting that the letter was "written before section 8 was enacted, [and] address[ed] a situation in which an employer reduced its compensation without any assertion of

coverage under the Act." The portion of the DOL memorandum relied on by the *Blanton* court states:

> Thus, although the text of Section 8 itself refers to only one date, it is a reasonable reading of the legislative history that two effective dates

The 1986 Department of Labor (DOL) memorandum on which *Blanton* relied would not support a similar conclusion that intent was not required in the Wichita Falls fact situation. The memorandum states:

> The legislative history suggests an effective date of November 13, 1985 ... with respect to nonresponsive unilateral pay rate reductions. The legislative history ... refers to a unilateral pay reduction "that is intended to nullify *this legislative application of overtime compensation*" (emphasis added) and denounces public employers' reduction of regular pay rates "*shortly after the date of enactment* so as to negate the premium compensation *mandated by this legislation.*" (emphasis added).

Thus, it can be seen that the same memorandum on which the Sixth Circuit relies in finding intent was not required in Blanton's case supports this Court's contrary conclusion for Wichita Falls' reductions. *York*, 944 F.2d at 241 (citation omitted).

After careful review of *Blanton,* we are persuaded that its holding does not govern the case on appeal. The *Blanton* court clearly was addressing itself to the factual situation in which the wage reduction took place (1) *after* the enactment of section 8 *and* (2) *after* an assertion of coverage by the affected employees. Nothing in the court's examination of the legislative history indicates that its holding was intended to nullify the causation requirement of section 8 during the period prior to the enactment of that section. In particular, the *Blanton* court's reliance on the Department of Labor memorandum makes it clear that that decision is limited to

actions of public employers taken after November 13, 1985, which was the last day before the amendments to the FLSA were enacted.

*York,* on the other hand, deals solely with a pre-enactment violation, and while its language might be read to apply more broadly than that, we find that its reasoning is persuasive at least as it applies to pre-enactment violations. We note in particular the emphasis that the *York* court places on the portion of the Department of Labor memorandum discussing the legislative history of the "unilateral pay reduction 'that is intended to nullify *this legislative application of overtime compensation,*' and denounces public employers' reduction of regular pay rates '*shortly after the date of enactment* so as to negate the premium compensation *mandated by this legislation*'." *York,* 944 F.2d at 240. In our view, this language points out one critical difference between the action taken by the City of Bristol in reducing wage rates in response to the Supreme Court's decision in *Garcia,* and the action taken by the City of Murfreesboro in *Blanton* in reducing wage rates after the Congress had enacted legislation forbidding public employers from making such reductions. Clearly, at the time that the City of Bristol recalculated its fire fighters' wage rates, it was neither illegal nor discriminatory for the City to make the adjustments necessary to stave off the fiscal problem that was about to ensue because of *Garcia.* The City's action was neither a unilateral pay reduction "intended to nullify *this legislative application* of overtime compensation," nor a reduction of regular pay rates made "*shortly after the date of enactment so as to negate the premium compen-*

---

were intended. It is therefore our opinion that under the provisions of Section 8, actions taken by public employers subsequent to February 19, 1985, would constitute discrimination if they are in response to assertions of FLSA overtime coverage by employees after February 19, 1985. *Actions taken* by employers on or after November 13, 1985 to reduce employees' regular rate of pay or fringe benefits, *which are intended to nullify the effect of FLSA overtime coverage, would constitute discrimination under Section 8* whether or not they are in response to employee assertions of coverage. 856 F.2d at 736. The court noted in regard to this memorandum,

Thus, in this area of uncertainty, we believe some deference may be shown to the agency charged with enforcing the Fair Labor Standards Act. Absent any compelling arguments to the contrary, and given the above conflicts, we agree with the Department of Labor's current interpretation that it is not necessary to prove the employer intended to retaliate to prove a violation of section 8 if an employer, such as the City of Murfreesboro, reduced its employees' rates of pay so as to nullify the effect of extending the Act's coverage.
*Id.*

*sation mandated by this legislation,"* because there was at that time no legislation whose effects could be nullified or negated. And prior to the enactment of the amendments to the FLSA on November 14, 1985, not only was there nothing in the Act to prohibit such action, *see Wethington v. City of Montgomery,* 935 F.2d 222, 227–28 (11th Cir.1991), the Act simply was not applicable to the City.

The enactment of section 8 made it a violation of section 15(a)(3) to discriminate "against an employee with respect to the employee's wages or other terms or conditions of employment because on or after February 19, 1985, the employee asserted coverage under section 7 of the Fair Labor Standards Act...." § 215(a)(3) [section 15(a)(3) ]. Whatever that language may now, in light of legislative history, be construed to mean regarding wage reductions undertaken after the section's enactment, it cannot—without simply reading out of it the language of causation—be construed to mean that a reduction in wages, made prior to the section's enactment and in the absence of any assertion of coverage by the employees involved, is a violation of the section's terms.[2]

Accordingly, we hold that the judgment of the district court that the City violated section 8 by recalculating the fire fighters' wage rates in July, 1985, must be reversed.

**B.**

We hold also that the district court erred in finding that the City violated section 7. Had the City failed to pay the fire fighters one and one-half times their regular wage rate for any overtime worked, it would have violated section 7. 29 U.S.C. § 207(a)(1) [section 7]. At argument, counsel for the fire

fighters seemed to say that the fire fighters in fact had not been paid overtime for overtime hours worked. However, this is not supported by the record. The record reveals that the City in fact has paid the fire fighters overtime at the recalculated rates from July of 1985 to the present, and even paid them that overtime after Congress enacted the November 1985 amendments postponing until April 15, 1986, the Act's effective date for public employers. Section 7 does not prohibit changes in wage rates; it prohibits payment of overtime at less than one and one-half times the regular wage rate. Therefore, the reduction in wage rate did not violate the overtime provisions because the fire fighters received the overtime pay due them.

Our conclusion is supported by *Wethington v. City of Montgomery,* 935 F.2d 222 (11th Cir.1991). There, the Eleventh Circuit addressed the city's new pay plan for fire fighters adopted on April 15, 1985, which changed the fire fighters' pay from a salary to an hourly system and resulted in a wage-rate reduction. *Id.* at 225. The court found that the Supreme Court's holdings suggest that had the city recalculated the wage rate after the FLSA took effect, the scheme might be invalid because it did not apply the regular rate of pay used under the old system and because it was based on a fictional increase in the number of overtime hours. *Id.* at 227–28. The court, however, held that since the recalculation occurred before the FLSA's April 15, 1986, effective date, the FLSA did not govern the calculations. It also found that the FLSA probably does not prohibit a reduction in the wage rate even after the FLSA applied and even without an employee-employer contract. *Id.* at 228–29. Thus, under *Wethington,* the City here clearly did

---

2. We note that the *Blanton* court made specific reference to the legislative history indicating that Congress contemplated that employees would have to make an assertion of coverage:

> The antidiscrimination provision is meant to apply *where one or more employees are singled out for adverse treatment in retaliation for an assertion that they are covered by the overtime provisions of the FLSA. The provision also is intended to apply where an employer's response to the assertion of FLSA coverage is to reduce wages or other monetary benefits for an entire unit of employees. In either instance, the actu-*

*al victims of discrimination must show that coverage was asserted* and they also must show actual discrimination, i.e., that the employer's action constituted retaliation for the employee or employees' assertion of coverage and avoidance of the asserted protections of Federal law. If a court so finds, that conduct would be unlawful under section 8.

*Blanton,* 856 F.2d at 734–35 (emphasis added) (quoting Joint Explanatory Statement of the Committee of Conference, House Conference Report No. 99–357, at 8–9, *reprinted in* 1985 U.S.Code Cong. & Admin.News 651, 670).

not violate the FLSA when the calculations— the key event—occurred before the FLSA took effect for municipalities. *See Walling v. A.H. Belo Corp.*, 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716 (1942) (noting that the FLSA does not bar an employer from contracting with his employees to pay them the same wages but at a lower rate so long as the lower rate meets the minimum wage).

The district court's reliance on *Rhodes v. Bedford County, Tenn.*, 734 F.Supp. 289 (E.D.Tenn.1990), a case holding that a changeover from a salaried to an hourly scheme on June 30, 1986—after the FLSA went into effect—violated section 7, is misplaced. The changeover in *Rhodes* occurred after the FLSA had taken effect, where here the wage reduction occurred during the grace period.

Thus, we find that the district court erred in finding a section 7 violation.[3]

## C.

■ We find that even if the City had violated section 7 or section 8 of the FLSA, these claims are time-barred. An action for unpaid overtime compensation or unpaid minimum wages must be brought within two years "after the cause of action accrued," or within three years of the accrual of the cause of action if the cause of action arises out of a willful violation.[4] The City argues that the cause of action accrued at the time of the recalculations in July of 1985 and that plaintiffs did not file their suit until September 26, 1990, five years after the recalculations.

The district court held that Count I was not time-barred, finding that the reduction in the wage rate is a continuing violation of the FLSA because the effect of the 1985 wage reduction continues to the present day. The

district court noted that the Fifth Circuit decided in a case "directly on point" that wage recalculations were not continuing violations, but added that the Sixth Circuit has not spoken on this issue. It then stated, citing *Rhodes*, 734 F.Supp. at 289, that the district courts of Tennessee have been unanimous in holding that a section 8 violation, resulting from a rate reduction to avoid the impact of the FLSA's overtime provisions, "is a continuing violation which recurs with every paycheck."

We reverse the district court's finding and hold that Count I is time-barred because there are no continuing violations of either section 8 or section 7. Turning first to the section 8 violation alleged here, we find that even if the July 1985 recalculation of wage rates was a violation, it is not a continuing one that occurs with every paycheck. A Fifth Circuit case, *Hendrix v. City of Yazoo City, Missouri*, 911 F.2d 1102 (5th Cir.1990), is directly on point, as the district court acknowledged. In that case, the City of Yazoo City reduced the salary of its fire fighters during the time of the section 8 anti-discrimination provision, allegedly in anticipation of increased overtime payroll costs that would result from the application of the FLSA. The fire fighters brought suit more than three years after the reduction took place, alleging a discriminatory reduction in pay. *Id.* at 1103.

The *Hendrix* court noted that the continuing violation doctrine embraces two types of cases: 1) cases in which the violation occurred outside the period of the statute of limitations but is closely related to violations that are not time-barred, and 2) cases in which an initial violation outside the statute's limit is repeated within the statute period,

---

**3.** Since we find that plaintiffs' section 7 and section 8 claims contained in Count I are both without merit and time-barred, we need not address the district court's finding that fire fighters hired after the July 1985 recalculation are victims of a continuing violation as well and thus properly plaintiffs to this suit.

**4.** The statute of limitations provision reads:

> Any action commenced on or after May 14, 1947, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensa-

tion, or liquidated damages, under the Fair Labor Standards Act of 1938 ...

> (a) if the cause of action accrues on or after May 14, 1947—may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued;

29 U.S.C. § 255.

with the result that the limitations period begins anew with each violation and recovery is available for violations that occur within the period of limitations. *Id.* The *Hendrix* court noted that although age discrimination cases and equal pay cases have held that the discriminatory amounts paid in each paycheck constitute a renewed violation, another line of cases holds that "if the discrimination alleged is solely the result of a single violation that occurred outside the statute of limitations, the later effect of this act does not constitute a continuing violation of the statute." *Id.* at 1104. It then concluded:

> As *Lorrance* [sic] makes clear, the distinction does not turn on the type of discrimination, but on whether the practice at issue is part of, or a repetition of, a past discriminatory act, in which case there is a continuing violation, or whether it is facially neutral, simply giving effect to prior discrimination, in which case there is no continuing violation.

*Id.* (discussing *Lorance v. AT & T Technologies*, 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989), *superseded by statute*, 42 U.S.C. § 1981(a)). It noted that the key is whether the original discriminatory act had " 'the degree of permanence that should trigger an employee's awareness of and duty to assert his or her rights.' " *Id.* at 1104 (quoting *Berry v. Board of Supervisors of L.S.U.*, 715 F.2d 971, 981 (5th Cir.1983)). The court then concluded that there was no continuing violation because the fire fighters were fully aware of the City's reduction in their base pay when they received their April 15, 1986, paychecks: "The reduction in pay was itself the violation; subsequent pay packets simply gave it continuing effect in a facially neutral manner." *Id.*

The result in *Hendrix* is consistent with Sixth Circuit precedent concerning the continuing violation doctrine in other contexts. In *EEOC v. Penton Indus. Publishing Co.*, 851 F.2d 835 (6th Cir.1988), a case of unequal pay based on sex discrimination, we held that there are two "narrowly limited exceptions of 'continuing violations' " that toll the running of the statute of limitations under Title VII or the Equal Pay Act. *Id.* at 838. The first "arises where there is some evidence of *pres-*ent discriminatory activity giving rise to a claim of a continuing violation, i.e., where an employer continues to presently impose disparate work assignment or pay rates between similarly situated employee groups." *Id.* The second "arises where there has been a long-standing and demonstrable policy of discrimination, such as an established and repeated pattern of paying men more than women." *Id.* To constitute an established pattern, the plaintiff must demonstrate some over-arching policy of discrimination "and not merely the occurrence of an isolated incident of discrimination." *Id.*

This case does not meet either of the exceptions in *Penton*. Here, there is no evidence of *"present* discriminatory activity" because, unlike the case of discrimination in pay based on sex, here there is no continuing activity of imposing a disparate pay rate on the fire fighters in comparison to others. And, there is no "over-arching policy of discrimination," only a "single isolated incident" of wage-rate reduction in 1985 that consequently affects the wage rate that the fire fighters currently receive.

We disagree with the reasoning in *Rhodes* cited by the district court. There, ambulance employees brought suit to recover unpaid overtime. The district court held that the failure to provide overtime payments was a continuing violation because "[t]he failure to provide plaintiffs with proper overtime payments is not a discrete one-time event, but occurs with each paycheck the plaintiffs receive." 734 F.Supp. at 292. This reasoning fails to acknowledge that, unlike a discriminatory act or pay rate that continues to be imposed by an employer, here the 1985 recalculation was a "discrete one-time event" and it is "continuing" only in that the fire fighters' wage rate is less than it would have been without the recalculation.

Finally, we note that the sunset provision in section 8 limits section 8's protections against discrimination after August 1, 1986, to "the employee who takes an action described in section 15(a)(3) of such Act." § 215 note. Asserting coverage under the FLSA is not an action described in section 15(a)(3); rather that section prohibits discrimination against employees who have filed a complaint or proceeding against the em-

ployer for an FLSA violation. § 215(a)(3). Plaintiffs do not claim that the City's recalculation of wage rates was in response to any action of plaintiffs' described in section 15(a)(3), and therefore, after August 1, 1986, section 8 provided them no further protection. Thus, plaintiffs would have had to file suit within three years from that date—by August 1, 1989—not to be time-barred.

Neither is there any "continuing violation" of section 7. Even if the recalculation of wage rates were held to be a violation of the overtime provisions of section 7, that violation occurred in July 1985. The only continuing effect is a reduced pay rate that absorbed any overtime increase that would have occurred without the wage reduction. Therefore, we find that there was no continuing violation of the FLSA, and that the section 7 and section 8 claims alleged in Count I are time-barred.

### III.

Because the City did not violate section 8 or section 7, and because in any case plaintiffs' section 7 and section 8 claims are barred by the FLSA's statute of limitations, we **REVERSE** the district court's granting of partial summary judgment to plaintiffs and **REMAND** the case to the district court to grant defendant's motion for partial summary judgment as to Count I.