_____

**CONCURRENCE**

_____

KAREN NELSON MOORE, Circuit Judge, concurring. I concur because under our precedents and those of the Supreme Court it is clear that plaintiffs present claims of continuing effects of past discriminatory acts and do not claim discriminatory acts within the statutory time period. Plaintiffs' complaint consists of claims based entirely on the testing process utilized by the Memphis Police Department to compile an eligibility list for promotion to major. That testing process was complete and the eligibility list issued on May 29, 1996, listing eligible candidates in order of rank based on the test and assessment process. After that point plaintiffs do not claim that any further discriminatory acts occurred, apart from the Memphis Police Department's utilization of the eligibility list to promote candidates in their rank order from the list. Plaintiffs do not claim that the promotions from the eligibility list were discriminatory in any way apart from the reliance on the initial allegedly discriminatory testing process. Given these circumstances, our precedents in *Anderson v. City of Bristol*, 6 F.3d 1168 (6th Cir. 1993), and *Dixon v. Anderson*, 928 F.2d 212 (6th Cir. 1991), as well as the Supreme Court's decisions discussed in the majority opinion, lead inevitably to the conclusion that plaintiffs have not satisfied the requirements to show applicability of the continuing violations exception.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0370P (6th Cir.)
File Name: 00a0370p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

SHARON W. COX, et al.,
  *Plaintiffs-Appellants,*

  *v.*                                No. 99-5789

CITY OF MEMPHIS, et al.,
  *Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 99-02103—Jerome Turner, District Judge.

Argued: September 13, 2000

Decided and Filed: October 18, 2000

Before: GUY and MOORE, Circuit Judges; DOWD,
District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Everett Gibson, BATEMAN, GIBSON & CHILDERS, Memphis, Tennessee, for Appellants. Louis P. Britt III, FORD & HARRISON, Memphis, Tennessee, for

_____

[*] The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

Appellees.  **ON BRIEF:**  Everett Gibson, BATEMAN, GIBSON & CHILDERS, Memphis, Tennessee, for Appellants.  Louis P. Britt III, Carrie Lynn Clark, FORD & HARRISON, Memphis, Tennessee, for Appellees.

DOWD, D. J., delivered the opinion of the court, in which GUY, J., joined.  MOORE, J. (p. 12), delivered a separate concurring opinion.

———————————

## OPINION

———————————

DOWD, District Judge.

### I.

This is an appeal from the district court's dismissal of the plaintiffs-appellants' Complaint against defendants-appellees the City of Memphis and Walter Winfrey, Director of the Memphis Police Department ("MPD").  The Complaint alleged that the City of Memphis had engaged in racial discrimination with respect to certain officers seeking promotion in the MPD.  Each plaintiff is a white female holding the rank of lieutenant in the MPD.  On November 16, 1995, the MPD began an elective process for promotion to the rank of major.  All of the plaintiffs participated in the elective process, which involved examinations and various assessments.  On May 29, 1996, the MPD published an Information Bulletin listing the eligible candidates for promotion in order of rank based upon the test and assessment results.  Eleven of the 69 candidates were women.  Of the eleven women, five were white and six were black.

The Bulletin stated that the promotional list would be effective for two years.  The first 18 candidates in rank order, including five of the six black females, were promoted to major on May 30, 1996.  More than two years later, on June 22, 1998, the MPD made its second, and last, round of

promoted despite the alleged discrimination.  In contrast, the plaintiffs in *Ricks*, *Evans*, and *Bronze Shields* never made it onto the eligibility list and so could not have expected that they would be hired.

The Court believes, however, that the mere possibility that one will be hired or promoted despite an allegedly discriminatory ranking does not mean that the failure to promote or hire should be treated as a discriminatory act separate from the original act of discrimination.  A rule that would allow employees to "sit on their rights" in the hopes that promotion would occur despite alleged discrimination in an eligibility roster would contradict the considerations outlined above.  Namely, an employer's staffing and hiring decisions would essentially remain tentative during the entire period in which a roster was utilized, and for a substantial period thereafter if litigation ensues.  This is an unreasonable demand to make upon employers when potential plaintiffs know of alleged discrimination in ranking many months or years before a failure to promote.  Hence, the assignment of an allegedly discriminatory ranking is the relevant discriminatory act even where the low ranking is not a "certain prelude" to an adverse employment action.  *Huels* 121 F.3d at 1051; *cf. Kennedy v. Chemical Waste Management, Inc.*, 79 F.3d 49 (7th Cir. 1996).

Again, it is the act of discrimination, and not any effect or consequence, that triggers the time to file an EEOC charge.  The fact that a particular effect may or may not materialize does not change its character as an effect.

### V.

For the reasons set forth above, the district court's Order dismissing the plaintiffs' complaint is AFFIRMED.

which noted that "plaintiffs do not allege that Newark would have followed anything but a neutral, non-discriminatory procedure in hiring from the list." 677 F.2d at 1083. *See also Huels v. Exxon Coal USA, Inc.*, 121 F.3d 1047, 1051 (7th Cir. 1997); *Woodson v. Int'l Brotherhood of Electrical Workers Local 292*, 974 F.Supp. 1256, 1260 (D. Minn. 1997) (continuing acts doctrine does not apply because use of facially neutral policy is merely current effect of past discriminatory acts).

Moreover, there are important policy considerations that counsel against treating promotions from a questionable list as a continuing act. For instance, courts must take care not to "expose employers to a virtually open-ended period of liability." *Abrams v. Baylor College of Medicine*, 805 F.2d 528, 534 (5th Cir. 1986). To allow employees to challenge an eligibility roster during the entire time it is used would be to create substantial uncertainty for employers who have to make important staffing decisions based upon the list. This is an important consideration given that many rosters are intended to be used for several years after they are promulgated. *Cf. Penton Indus.*, 851 F.2d at 839 (courts must not reduce statutes of limitations "to a nullity"). Here, for instance, the plaintiffs were placed on an allegedly discriminatory list in May 1996; but they did not file EEOC charges until November 1998. Hence, plaintiffs' suit could have been brought at a much earlier time and, as a result of the delay, the potential litigation would have called into question an organizational structure that had been in place for two years.

## IV.

Although at first blush this case falls squarely within prior case law, a distinction that can be made is that the alleged discrimination in the present case did not result in plaintiffs' exclusion from the list of eligible candidates but merely affected their ranking on that list. That is, even after the alleged discrimination, the plaintiffs were still potential promotees and could hold out the hope that they would be

promotions from the eligibility list.[1] None of the plaintiffs were selected in either the first or second round.

Thereafter, plaintiffs Sharon W. Cox, Patricia A. Lovett, Brenda P. Maples and Patricia C. Pendleton filed charges with the Equal Employment Opportunity Commission on November 5, 1998. Plaintiff Candace A. Hale filed four days later. On November 12, 1998, the EEOC dismissed the plaintiffs' charges—all of which had been filed more than 28 months after promulgation of the eligibility list—for "failure to file the charge within the time specified by law." The plaintiffs received a notice of right to sue and timely filed their Complaint in federal court on February 3, 1999.

According to the Complaint, most of the executive officers of the MPD, including defendant Winfrey, are black males. The Complaint alleges that those in command of the testing process, as well as those to whom management delegated responsibility to conduct the tests, deliberately set out to discriminate against white females in the promotional process. The Complaint specifically alleges that the MPD coached preferred employees in advance of the test by giving them answers to questions that the management knew to be on the test and by giving them test questions for study purposes.

Plaintiffs filed this civil action alleging racial discrimination under 42 U.S.C. § 2000e-5(f), 42 U.S.C. § 1983 and Tennessee Code § 4-21-311(a). On March 26, 1999, defendants filed a motion to dismiss predicated entirely on statute of limitations grounds. Plaintiffs responded and filed a motion to amend their Complaint in order to clarify their contention that each promotion from the eligibility list constituted a separate act of discrimination. The district court granted both motions on May 10, 1999, finding that plaintiffs had failed to timely file their EEOC charges and that their suit

---

[1]The parties do not explain why the second round of promotions occurred after the apparent expiration date of the roster; however, this point is not important to this appeal.

therefore could not proceed. The district court entered judgment on May 28, 1999 and plaintiffs timely filed a Notice of Appeal on June 8, 1999.

## II.

In order to recover for a discriminatory act under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., a plaintiff must timely file a charge with the EEOC. *See EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 46 (6th Cir. 1994). A charge of discrimination must be filed with the EEOC within 180 days after the alleged unlawful employment practice occurred.[2] 42 U.S.C. § 2000e-5(e)(1). The usual rule in discrimination cases is that this time for filing is "triggered at the time the alleged discriminatory act occurred." *Dixon v. Anderson*, 928 F.2d 212, 216 (6th Cir. 1991) (quoting *Penton Indus. Pub. Co.*, 851 F.2d 835, 837-38 (6th Cir. 1988)). The parties seem to agree that the "discriminatory act" in this case occurred with the promulgation of the eligibility list on May 29, 1996.[3] The parties differ, however, on whether the doctrine of "continuing acts," which creates a narrow exception to the usual rule, brings the plaintiffs' Complaint within the limitations period.[4]

---

[2] If a charge is pursued with the equivalent state agency, a plaintiff has 300 days in which to bring a charge with the EEOC. 42 U.S.C. § 2000e-5(e)(1). This extended filing provision does not affect the present case except that certain precedents discuss a 300 day rule.

[3] Although the "discriminatory act" in this case may be the coaching of preferred employees, the parties and most of the case law apparently find it more convenient to identify the promulgation of an eligibility roster as the initial discriminatory act.

[4] Appellants apparently concede that a ruling on "continuing acts" under § 2000e-5(e)(1) is dispositive on whether plaintiffs filed timely under 42 U.S.C. § 1983 and Tennessee Code § 4-21-311(a).

known he was not going to be promoted . . . ."); *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996) (stating in *dicta* that the continuing violation exception applies when there is evidence of an ongoing discriminatory practice "such as the use of discriminatory seniority lists or employment tests").

This Court believes the better view is that promotion or hiring from an allegedly tainted promotions roster is not a "continuing act" but is merely the effect of previous discrimination. It is at the point of promulgation of the roster that a potential plaintiff is aware that alleged discrimination is likely to play a pivotal role in her future advancement. Hence, the promulgation of an allegedly tainted roster is an event that "'should . . . alert[ ] the average lay person to protect his rights.'" *Conlin v. Blanchard*, 890 F.2d 811, 815 (6th Cir. 1989) (citation omitted). Further, the allegedly tainted roster in this case was to be used in the promotions process for two years after its promulgation. It therefore "had 'the degree of permanence that should trigger an employee's awareness of a duty to assert his or her rights.'" *Anderson*, 6 F.3d at 1175 (citation omitted).

In addition, the fact that the MPD's eligibility list was neutral on its face, and that the hiring procedure operated in a neutral manner after the list was compiled, brings this case under the rules articulated in *Evans* and *Lorance*. As the plaintiffs concede, the promotions were made neutrally, *i.e.*, in rank order, from the eligibility list and any discrimination occurred in the compilation of the list. Such facial neutrality played a role in *Dixon v. Anderson*, 928 F.2d 212 (6th Cir. 1991), where the plaintiffs alleged that their non-membership in a retirement system was the result of discrimination and claimed that the use of the system constituted a continuing violation. The court stated that, "[o]nce the division into members and non-members has been made . . . the system operated neutrally" and that "plaintiffs' cause of action was triggered when they learned of their classification as non-members." *Id.* at 216-17. The facial neutrality of an eligibility list also influenced the court in *Bronze Shields*,

promotions to the plaintiffs was not a continuing violation because the denial of promotions was a separate and inevitable consequence of the fact that plaintiffs were not on the hiring list. *Id.* at 1083-84. The Third Circuit applied *Bronze Shields* in *Hood v. New Jersey Dept. of Civil Service*, 680 F.2d 955 (3d Cir. 1982), where New Jersey firefighters challenged the validity of a civil service examination that was used to establish the ranking order of a promotions roster. The court again held that the statute of limitations began to run on the day the roster was promulgated, at least as to those plaintiffs who had not made the list. *Id.* at 959.[7]

In contrast to the Third Circuit, the Second Circuit treats hiring from an allegedly tainted roster as an act of discrimination distinct from the original acts of discrimination. In *Guardians Ass'n of New York City Police Dept. v. Civil Service Comm'n of City of New York*, 633 F.2d 232 (2d Cir. 1980), plaintiffs alleged that the New York Police Department's civil service exams administered in 1968-70 were discriminatory. The question in *Guardians* was whether the defendant had committed any discriminatory acts after 1972, the year in which Title VII was made applicable to municipalities. *Id.* at 247. The Second Circuit upheld the district court's holding that "the department's reliance on eligibility lists reflecting performance on discriminatory examinations constituted a program of discriminatory hiring which terminated only when the last person was hired off the lists—that is, in October of 1974." *Id.* at 247-48. The court rejected the view that the operative event in the hiring procedure was the promulgation of the eligibility lists and that the department's refusals to hire were merely effects of earlier discriminatory conduct. *Id.* at 248, 251; *see also Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999) (duty to file charges did not commence until eligibility list expired because it was at that point that the plaintiff "should have

[7] As to the plaintiffs who had passed the examination and made the list, the court dismissed their charges because the complaint had been filed over one and a half years after expiration of the list. 680 F.3d at 959.

There are two categories of "continuing acts" and only the first is germane to this appeal.[5] The first category of continuing acts arises when there is an ongoing, continuous series of discriminatory acts. *See Haithcock v. Frank*, 958 F.2d 671, 677 (6th Cir. 1992). In such a case, the series of acts may be challenged in their entirety as long as one of those discriminatory acts falls within the limitations period. *Id.* However, a critical distinction in the continuing acts doctrine is that the limitations period begins to run in response to discriminatory acts themselves, rather than in response to the continuing effects of past discriminatory acts. *Dixon*, 928 F.2d at 216 (citing *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980) and *United Airlines v. Evans*, 431 U.S. 553, 557 (1977)).

Plaintiffs contend that defendants committed a separate discriminatory act each time they promoted someone on the basis of the allegedly flawed eligibility list. Plaintiffs point out that "each time promotions are granted, job openings must be evaluated, changed conditions must be taken into account, and the decisionmaking process must be renewed . . . to determine whether promotions should be awarded in the first place and whether the list still controls the promotional process." On the other hand, the defendants argue that the promotions are not in themselves discriminatory acts. According to defendants, the district judge was correct in stating that "the actual promotions themselves at future dates constituted an effect of the original discriminatory act."

### III.

The Sixth Circuit has no precedent on whether promotions from an allegedly tainted eligibility list constitute continuing acts. However, there are a few Supreme Court cases that, while not directly on point, suggest that they are not. In

[5] The appellants also appear to concede that the second category of continuing acts, which arises when there is a longstanding and demonstrable policy of discrimination, *see Dixon*, 928 F.2d at 217, does not apply to this case.

*Delaware State College v. Ricks*, 449 U.S. 250 (1980), the plaintiff was a Liberian professor who claimed discrimination on the basis of his national origin. Ricks was notified at the beginning of the school year that he would not receive tenure. As is usually the practice, the university offered him a "terminal contract" that allowed him to teach for one year before he was released. *Id.* at 252-53. Ricks argued that the time for filing his EEOC charge commenced when he was terminated and not when he was denied tenure.

The Court disagreed, finding that "termination of employment at Delaware State is a delayed, but inevitable, consequence of the denial of tenure." *Id.* at 257-58. The Court noted that the proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful. *Id.* at 258. The Court added that "[t]he emphasis is not upon the effects of earlier employment decisions; rather, it is upon whether any present violation exists." *Id.* (citing *Evans*, 431 U.S. at 558).

Another pertinent Supreme Court case is *United Airlines v. Evans*, 431 U.S. 553 (1977), in which a flight attendant was forced to resign in 1968 because she violated the company's policy against employing married flight attendants. A court later found the marriage policy to be illegal and United Airlines discontinued it; but the plaintiff had not been a party in the earlier case and had not filed EEOC charges challenging her forced resignation. *Id.* at 554-55. In November 1968, United provided for the reinstatement of certain flight attendants who had been terminated pursuant to its no-marriage rule. The plaintiff was not reinstated with the others, but was re-hired in 1972 as a new employee without her previous seniority status. *Id.* at 555. She sued, claiming that the failure to reinstate was a "continuing act" because "the seniority system gives present effect to the past illegal act and therefore perpetuates the consequences of forbidden discrimination." *Id.* at 557.

The Court rejected that argument, stating that although the seniority system has a continuing impact on the plaintiff's pay and fringe benefits, "the critical question is whether any present violation exists." *Id.* at 558. Finding that there was no present violation, the Court emphasized that "the system is neutral in its operation" because there was no indication that it discriminates against former female employees or that it treats former employees discharged for a discriminatory reason differently from those who were not. *Id.*

Another relevant Supreme Court case is *Lorance v. AT&T Technologies, Inc.*, 490 U.S. 900 (1989), in which the Court held that a claim of discrimination based on a facially neutral seniority system begins to run at the time of adoption of the seniority system.[6] *Lorance* stands for the proposition that

the distinction does not turn on the type of discrimination, but on whether the practice at issue is part of, or a repetition of, a past discriminatory act, in which case there is a continuing violation, or whether it is facially neutral, simply giving effect to prior discrimination, in which case there is no continuing violation.

*Anderson v. City of Bristol*, 6 F.3d 1168, 1175 (6th Cir. 1993) (citation omitted).

Only a handful of lower courts have grappled with the issue of tainted eligibility lists. The defendants rely primarily on Third Circuit cases holding that the promulgation of a facially neutral promotions roster triggers the time for filing an EEOC charge and subsequent promotions or hiring decisions based on such a list are not continuing acts. In *Bronze Shields, Inc. v. New Jersey Dept. of Civil Service*, 667 F.2d 1074 (3d Cir. 1981), plaintiffs had failed a civil service examination used by the City of Newark to determine eligibility for hiring police officers. The court held that use of the list in denying

---

[6] The specific holding in *Lorance* was superseded by statute in 1991. *See* 42 U.S.C. § 2000e-5(e).