*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0117p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

LINDA LEFFMAN,

               *Plaintiff-Appellant,*

    *v.*

SPRINT CORPORATION,

               *Defendant-Appellee.*

No. 06-3211

---

Appeal from the United States District Court
for the Northern District of Ohio.
No. 04-07222—James G. Carr, Chief District Judge.

Argued: December 6, 2006

Decided and Filed: March 30, 2007

Before: MOORE and CLAY, Circuit Judges; BELL, Chief District Judge.[*]

---

### COUNSEL

---

**ARGUED:** Kimberly A. Conklin, KERGER & ASSOCIATES, Toledo, Ohio, for Appellant. John B. Lewis, BAKER & HOSTETLER, Cleveland, Ohio, for Appellee. **ON BRIEF:** Kimberly A. Conklin, Richard M. Kerger, KERGER & ASSOCIATES, Toledo, Ohio, for Appellant. John J. Yates, HUSCH & EPPENBERGER, Kansas City, Missouri, for Appellee.

---

### OPINION

---

    KAREN NELSON MOORE, Circuit Judge. In this employment discrimination suit, Plaintiff-Appellant Linda Leffman ("Leffman") alleges that Defendant-Appellee Sprint Corporation ("Sprint") violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., by denying her, in calculating her years of service at the time of her termination in 2000, credit for time that she spent on maternity leave in 1976. The district court granted summary judgment in favor of Sprint, and Leffman now appeals. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

---

[*]The Honorable Robert Holmes Bell, Chief United States District Judge for the Western District of Michigan, sitting by designation.

# I. BACKGROUND

Leffman worked for Sprint from 1973 until 2000. In 1976, she had a baby. At that time, Title VII had not yet been modified by the Pregnancy Discrimination Act ("PDA"), Pub. L. No. 95-555, 92 Stat. 2076 (1978) (codified at 42 U.S.C. § 2000e(k)), to prohibit discrimination on the basis of pregnancy, and Sprint therefore did not then act illegally in requiring Leffman to take an unpaid leave of absence instead of a paid maternity leave. Upon her return to work, Leffman was notified that the leave of three months and three days had been deducted from her credited service time. She discussed the issue with her union representative, but took no other action. In 1978, she took another unpaid maternity leave, which was also deducted from her credited service.

In 1986, after the enactment of the PDA and in response to an enforcement action by the Equal Employment Opportunity Commission ("EEOC"), Sprint adjusted Leffman's credited service time to include her 1978 (but not her 1976) leave. When notified of the adjustment, Leffman asked whether she would also receive credit for her 1976 leave and was informed that she would not. She did not file an EEOC charge or a lawsuit at that time.

On February 25, 2000, Leffman's position was eliminated, and Sprint informed her that she was not eligible for Special Early Retirement ("SER") benefits under the Sprint Retirement Pension Plan ("SRPP"), which determines pension benefits according to an employee's credited service time. The SRPP defines credited service, in relevant part, as "the sum of . . . the [employee's] aggregate Periods of Service . . . ." Joint Appendix ("J.A.") at 351 (SRPP at 13). A period of service, in turn, is "a period (including any periods of Credited Leave not otherwise included in a Period of Service) beginning on a Member's Employment Commencement Date and ending on the Member's Severance from Service Date (or, if earlier, the first anniversary of the Member's Medical or Family Leave)." J.A. at 360 (SRPP at 22).

Credited leave is defined, in pertinent part, as

> an Employee's leave of absence formally granted in accordance with rules of his or her Employer as adopted from time to time, either (1) for a period not in excess of one month or (2) for a period in excess of one month but not in excess of two years, *provided the Employee's Employer gives prior written consent to treat the leave as a period of service for purposes of one or more of the definitions of Eligible Employee, Continuous Service and Credited Service.*

J.A. at 350-51 (SRPP at 12-13) (emphasis added). In other words, an employee's pension benefits are calculated in proportion to the number of years during which the employee actively worked for Sprint, plus the duration of any leave of absence that was approved by Sprint for inclusion in the benefit calculation. It is undisputed that Leffman would qualify for SER benefits had she received credited-service time for the 1976 leave.

Following her termination, Leffman filed a charge of discrimination with the EEOC, alleging that Sprint had violated Title VII by denying her credit for the 1976 leave. After receiving a right-to-sue letter, she filed the instant suit. The parties filed cross-motions for summary judgment, which the district court granted in favor of Sprint, finding that any claim arising from the 1976 denial of service credit was time-barred and that Sprint had complied with Title VII in 2000 by applying the neutral provisions of its bona fide pension plan. Leffman now appeals that decision, arguing that the district court improperly granted summary judgment on a ground not asserted by Sprint, that the court's findings of fact were erroneous, and that the court erred in finding that Leffman's action is time-barred.

## II. ANALYSIS

### A. The Grounds for Summary Judgment

The district court ruled that Leffman's claim was barred by the seniority provision of Title VII, which provides, in relevant part, that, "[n]otwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system . . . ." 42 U.S.C. § 2000e-2(h). Leffman now argues that, because Sprint did not cite § 2000e-2(h) in its summary judgment motion, the district court erred in granting summary judgment on that ground without first affording Leffman an opportunity to brief the issue.

We employ two different standards of review in evaluating a district court's sua sponte grant of summary judgment:

> The substance of the district court's decision is reviewed de novo under the normal standards for summary judgment. The district court's procedural decision to enter summary judgment sua sponte, however, is reviewed for abuse of discretion. We have held that a district court may enter summary judgment sua sponte in certain limited circumstances, so long as the losing party was on notice that [it] had to come forward with all of [its] evidence. More specifically, we have held that FED. R. CIV. P. 56(c) mandates that the losing party must be afforded notice and reasonable opportunity to respond to all the issues to be considered by the court.

*Shelby County Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000) (internal quotation marks and citations omitted).

Although Leffman is correct in stating that Sprint's motion did not expressly cite § 2000e-2(h) but relied, instead, on *United Air Lines, Inc. v. Evans*, 431 U.S. 553 (1977), it is clear that Leffman had ample notice of § 2000e-2(h)'s relevance to the district court's summary judgment determination. In fact, as Leffman concedes, her *own* summary judgment motion discussed at length the interplay between § 2000e-2(h) and *Evans*. Accordingly, we hold that the district court did not abuse its discretion in its procedural decision to grant summary judgment on § 2000e-2(h) grounds.

Leffman also contends that the district court premised its summary judgment ruling upon an erroneous finding of fact—namely, that Sprint applied a facially neutral provision of the SRPP in denying Leffman SER benefits at the time of her termination in 2000. According to Leffman, Sprint never even claimed to have applied such a provision. Leffman's argument appears disingenuous, however, as the gravamen of Sprint's position is that, under *Evans*, its denial of SER benefits to Leffman in 2000 was a neutral act that merely gave continuing effect to the discrete (and time-barred) incident of discrimination that took place in 1976. Leffman's argument also mischaracterizes as a factual finding the district court's legal conclusion that *Evans* and § 2000e-2(h), as applied to the 2000 SRPP, justified Sprint's action. We therefore hold that the district court did not base its decision on controverted issues of fact.

### B. The Grant of Summary Judgment

Leffman also claims that the district court's grant of summary judgment in favor of Sprint is inconsistent with the Supreme Court's holding in *Evans*. Evans was a flight attendant whose employment was terminated upon her marriage, pursuant to United Air Lines, Inc.'s ("United") policy requiring that all flight attendants be unmarried. 431 U.S. at 554. Although the policy violated Title VII, Evans did not file a claim within the applicable statute of limitations. *Id.* at 554-55. She was later rehired by United, which refused to take her prior service into account in

determining her seniority. *Id.* at 555. She subsequently filed suit, alleging that the denial of seniority revived her original (and otherwise time-barred) Title VII claim. *Id.* at 556.

The Supreme Court disagreed, holding that

> [Evans] is correct in pointing out that [United's] seniority system gives present effect to a past act of discrimination. But United was entitled to treat that past act as lawful after [Evans] failed to file a charge of discrimination within the [applicable limitations period]. A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences.

*Id.* at 558.

Evans attempted to avoid that conclusion by arguing that United had committed a continuing violation—that is, that all of United's actions, from Evans's initial termination to the denial of seniority after she was rehired, constituted a single discriminatory practice that violated Title VII on an ongoing basis. *Id.* The Court, however, rejected that claim as well:

> Respondent emphasizes the fact that she has alleged a *continuing* violation. United's seniority system does indeed have a continuing impact on her pay and fringe benefits. But the emphasis should not be placed on mere continuity; the critical question is whether any present *violation* exists. She has not alleged that the system discriminates against former female employees or that it treats former employees who were discharged for a discriminatory reason any differently from former employees who resigned or were discharged for a non-discriminatory reason. In short, the system is neutral in its operation.

*Id.* (footnote omitted).

In the instant case, Sprint argues, and the district court agreed, that *Evans* mandates dismissal of Leffman's claim. Leffman contends, however, that *Bazemore v. Friday*, 478 U.S. 385 (1986), compels the opposite conclusion. In *Bazemore*, a group of African-American workers alleged that their employer had "maintained two separate, racially segregated branches and paid [African-American] employees less than [Caucasian] employees," and that, although it "had made some adjustments to try to get rid of the salary disparity resulting on account of [the] discrimination" after Title VII became applicable to it, the employer "ha[d] not made all the adjustments necessary to get rid of all such disparity." *Id.* at 394-95.

The Supreme Court held that the fact "that the [employer] discriminated with respect to salaries *prior* to the time it was covered by Title VII does not excuse perpetuating that discrimination *after* [it] became covered by Title VII," because

> [a] pattern or practice that would have constituted a violation of Title VII, but for the fact that the statute had not yet become effective, became a violation upon Title VII's effective date, and *to the extent an employer continued to engage in that act or practice*, it is liable under that statute.

*Id.* at 395 (final emphasis added). The *Bazemore* Court distinguished the facts before it from those of *Evans*, in which, "[b]ecause the employer was not engaged in discriminatory practices at the time the respondent . . . brought suit, there simply was no violation of Title VII." *Id.* at 396 n.6. In other

words, "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Delaware State Coll. v. Ricks*, 449 U.S. 250, 257 (1980).

We reached a similar conclusion in a case involving a challenge to a promotion procedure that involved the selection of candidates from a previously compiled list. *Cox v. City of Memphis*, 230 F.3d 199 (6th Cir. 2000). While the process of selecting a candidate from the list was itself neutral, the list had been compiled in a racially and sexually discriminatory manner. The "[p]laintiffs contend[ed] that [the] defendants committed a separate discriminatory act each time they promoted someone on the basis of the allegedly flawed eligibility list." *Id.* at 202. They "point[ed] out that each time promotions are granted, job openings must be evaluated, changed conditions must be taken into account, and the decisionmaking process must be renewed . . . to determine whether promotions should be awarded in the first place and whether the list still controls the promotional process." *Id.* (internal quotation marks omitted). We disagreed:

> This Court believes the better view is that promotion or hiring from an allegedly tainted promotions roster is not a continuing act but is merely the effect of previous discrimination. It is at the point of promulgation of the roster that a potential plaintiff is aware that alleged discrimination is likely to play a pivotal role in her future advancement. Hence, the promulgation of an allegedly tainted roster is an event that should . . . alert[] the average lay person to protect his rights.

*Id.* at 204 (internal quotation marks omitted).

In this case, as in *Cox*, "under our precedents and those of the Supreme Court it is clear that plaintiff[] present[s] claims of continuing effects of past discriminatory acts and do[es] not claim discriminatory acts within the statutory time period." *Id.* at 206 (Moore, J., concurring). As we held in *Anderson v. City of Bristol*,

> although age discrimination cases and equal pay cases have held that the discriminatory amounts paid in each paycheck constitute a renewed violation, another line of cases holds that "if the discrimination alleged is solely the result of a single violation that occurred outside the statute of limitations, the later effect of this act does not constitute a continuing violation of the statute."

6 F.3d 1168, 1175 (6th Cir. 1993) (quoting *Hendrix v. City of Yazoo City*, 911 F.2d 1102, 1104 (5th Cir. 1990)); *see also Dixon v. Anderson*, 928 F.2d 212, 217 (6th Cir. 1991) ("The Supreme Court has held that a neutral system that merely perpetuates the effects of previous discrimination is not a continuing violation."), *abrogated on other grounds by Sharpe v. Cureton*, 319 F.3d 259, 268 (6th Cir.), *cert. denied*, 540 U.S. 896 (2003); *Sawchik v. E.I. DuPont DeNemours & Co.*, 783 F.2d 635, 638 (6th Cir. 1986) ("It is now settled that the 300-day time period begins to run in a discrimination case when the individual involved became aware of the discriminatory act and not when the consequences are felt.").

As the Seventh Circuit has explained,

> we acknowledge that the line between continuing violations that arise with each new use of the discriminatory act (*e.g.*, the *Bazemore* paychecks) and past violations with present effects (*e.g.*, the *Evans* seniority) is subtle at best. But it is a line the Supreme Court has drawn, and it is our obligation to apply it if at all possible. First is the fact, simplistic as it may seem, that our case involves computation of time in service—seniority by another name—followed by a neutral application of a benefit package to all employees with the same amount of time. That suggests that we should look first to *Evans*, and follow the other line [of cases] only if there is no alternative.

*Ameritech Benefit Plan Comm. v. Commc'n Workers of America*, 220 F.3d 814, 823 (7th Cir. 2000), *cert. denied*, 531 U.S. 1127 (2001).

Leffman does not contend that Sprint treats employees who have taken non-credited maternity leave differently from employees who have taken other kinds of non-credited leave. Rather, all non-credited leave is excluded from Sprint's seniority calculations, and thus the effects of Sprint's past characterizations (whether justifiable or not) of leaves of absence as non-credited are now felt equally by men and women and by those with and without children. Therefore, applying the Supreme Court's decision in *Evans*, we must conclude that Leffman's claim is time-barred.

## III.  CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's grant of summary judgment in favor of Sprint.