

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-5-2004

# Bishop v. New Jersey

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1996

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

## Recommended Citation

"Bishop v. New Jersey" (2004). *2004 Decisions.* Paper 1117.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/1117

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-1996

DARIUS D. BISHOP; ERIC BARNES;
CHARLES D. BISHOP; WILLIE J. BOOKER;
JOHN F. BROWN; SAMUEL EVANS; ALVIN C.
FLEMING; TODD HAYES; WILLIAM E. JAMES;
CURTIS JOHNSON,
                                        Appellants

v.

STATE OF NEW JERSEY; THE NEW JERSEY
DEPARTMENT OF PERSONNEL AND MERIT
SYSTEM BOARD

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
D.C. Civil No. 02-cv-05458
District Judge: The Honorable John W. Bissell, Chief Judge

Argued November 20, 2003

Before: RENDELL, BARRY, and MAGILL,[*] Circuit Judges

(Opinion Filed: January 5, 2004)

---

[*] The Honorable Frank J. Magill, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

Paul I. Weiner, Esq. (Argued)
Weiner & Katz
301 South Livingston Avenue
Suite 101
Livingston, NJ 07039

Attorney for Appellants


Barbara A. Berreski, Esq. (Argued)
P.O. Box 112
Office of Attorney General of New Jersey
Division of Law
Richard J. Hughes Justice Complex
Trenton, NJ  08625

Attorney for Appellees

OPINION

BARRY, Circuit Judge

## I. BACKGROUND

The parties are familiar with the facts of this case, and, thus, we will provide but a brief summary of those facts at the outset, incorporating additional facts only as necessary to our discussion of the issues.

Plaintiffs/appellants are African-American firefighters, employed by the Newark Fire Department.  In 2000, each plaintiff took the New Jersey Department of Personnel Fire Lieutenant/Fire Captain promotional examination, an exam administered by the

State. On April 12, 2001, the results were released when the list of successful applicants eligible for promotion was promulgated by the New Jersey Department of Personnel and Merit System Board. Of the 287 men and women who took the exam, 129 passed and were listed in order of their score, from highest to lowest. Municipalities use this list to promote firefighters on the list in the order in which they are ranked as positions become available. The list is valid and in use until it expires on April 3, 2004.

Plaintiffs Darius Bishop, Alvin Flemming, and John Brown each passed the exam, and were ranked 66, 56, and 93 respectively.[1] Plaintiffs claim that the format and administration of the exam discriminated against minorities as evidenced by the disproportionately low numbers of minorities who passed the exam and the disproportionately lower ranking of those minorities who passed.

On April 12, 2001 (the day that the eligibility list was promulgated), Bishop filed an administrative appeal with the Merit System Board/Department of Personnel challenging the format and the administration of the exam. On January 21, 2002, plaintiffs filed a Charge of Discrimination with the EEOC against the Newark Fire Department only, alleging that the exam unlawfully operated to exclude them based upon race. On April 9, 2002, the EEOC issued to Bishop a Right to Sue letter with respect to

---

[1] These three are the only plaintiffs appealing the District Court's order. The other plaintiffs failed the examination, and it is clear that the statute of limitations has run as to them. See Bronze Shields, Inc. v. New Jersey Dep't of Civil Serv., 667 F.2d 1074 (3d Cir. 1981).

his charge against the Newark Fire Department.

On May 7, 2002, plaintiffs filed their first complaint in the U.S. District Court for the District of New Jersey against the State of New Jersey and the New Jersey Department of Personnel and Merit System Board ("State Defendants"), and against the City of Newark and the Newark Fire Department ("City Defendants"), alleging violations of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"); Title VII of the Federal Civil Rights Act, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"); and the Uniform Guidelines on Employee Selection Procedures issued by EEOC.[2] This complaint alleged that the nature and administration of the exam disproportionately excluded plaintiffs from promotion because of their race.

On June 3, 2002, Bishop's administrative appeal to the Merit System Board was denied. On July 9, 2002, defendants in the first action filed motions to dismiss, claiming sovereign immunity and plaintiffs' failure to exhaust administrative remedies. On August 2, 2002, plaintiffs filed a Charge of Discrimination with the EEOC against the State Defendants, alleging that the exam had a disparate impact on plaintiffs, that the results were defective, and that plaintiffs were discriminated against in the preparation, administration, and validation of the exam.

On September 26, 2002, the District Court granted the State Defendants' motion to

---

[2]Plaintiffs also alleged violations of a 1980 Consent Decree between the City of Newark and the U.S. Department of Justice ("Consent Decree"), and violation of the New Jersey Law Against Discrimination, N.J. STAT. ANN. § 10:5-1, et seq. ("LAD").

4

dismiss plaintiffs' first action as to them, and granted in part and denied in part the City Defendants' motion to dismiss. Most relevant to this appeal, the District Court dismissed plaintiffs' Title VII claim against the State Defendants because plaintiffs failed to name them in their first Charge of Discrimination filed with the EEOC.[3] Claims against the City Defendants remain pending in the first action.

On October 9, 2002, the EEOC issued to plaintiffs a Right to Sue letter with respect to the State Defendants. On November 14, 2002, plaintiffs filed their Complaint ("Complaint") in this action against the State Defendants, alleging violations of Title VII, LAD, § 1981, and the Consent Decree. Plaintiffs noted that they filed a Charge of Discrimination with the EEOC within 300 days of the last commission of the discriminatory employment practice – namely, the promotion of applicants from the eligibility list on July 20, 2002.

On December 18, 2002,[4] the State Defendants moved to dismiss the Complaint. On March 11, 2003, the District Court granted the State Defendants' motion, concluding that plaintiffs had not filed a charge with the EEOC within 300 days of the alleged

_____

[3]The District Court also dismissed plaintiffs' EEOC Guidelines claim because the guidelines do not provide an independent cause of action; dismissed plaintiffs' Consent Decree claims for lack of standing because they were not parties to that decree; dismissed plaintiffs' § 1981 claim against the State Defendants on the ground of Eleventh Amendment immunity, but sustained their § 1981 claim against the City Defendants; and dismissed plaintiffs' LAD claims against the State Defendants while sustaining those claims against the City Defendants.

[4]Plaintiffs claim in their brief to us that this motion was filed on January 28, 2003.

discriminatory act, as mandated by 42 U.S.C. § 2000e-5(e)(1); that plaintiffs were not entitled to equitable tolling while Bishop's administrative appeal was pending; and that the use of the eligibility list was not a continuing violation.[5]

Plaintiffs Bishop, Flemming, and Brown now appeal. We must decide from which date the 300 day statute of limitations for plaintiffs to file their charge with the EEOC should run: the date of the promulgation of the eligibility list, or the later dates of either the most recent round of promotions or the date on which the list will expire.[6]

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, and had supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II. DISCUSSION

Our review of the District Court's dismissal of a cause of action for failure to state a claim as time-barred is plenary. See, e.g., Anderson v. Consol. Rail Corp., 297 F.3d 242, 251 (3d Cir. 2002).

Plaintiffs argue that the promotions and ongoing validity of the eligibility list (until it expires in April 2004) are continuing discriminatory acts, and therefore a continuing

---

[5]The District Court also dismissed plaintiffs' § 1981 claim under the doctrine of res judicata because it had dismissed that claim in the first action and plaintiffs did not brief the issue when the motion to dismiss was pending. It dismissed plaintiffs' LAD claim because it had dismissed all federal claims against the defendants.

[6]Plaintiffs do not address the tolling issue in their briefs, and we do not reach it.

violation of Title VII.  They argue that each promotion they do not receive is a separate discriminatory act which triggers the running anew of the statute of limitations within which they must file a charge with the EEOC.  Defendants argue that these promotions and the ongoing validity of the eligibility list are merely the non-discriminatory effects of the alleged discriminatory format and administration of the exam, which culminated in the promulgation of the list.  We agree with defendants and the District Court, and hold that the statute of limitations had run by the time plaintiffs filed their charge against the State Defendants with the EEOC.[7]

Whether viewed separately or together, <u>Bronze Shields, Inc. v. New Jersey Dep't of Civil Serv.</u>, 667 F.2d 1074 (3d Cir. 1981), and <u>Delaware State College v. Ricks</u>, 449 U.S. 250 (1980) mandate our decision.  In <u>Bronze Shields</u>, the plaintiffs were seeking to become Newark police officers and took a written exam administered by the New Jersey State Department of Civil Service.  If they passed the exam, they would have been placed on an eligibility roster in the order in which they scored.  When Newark needed to hire new police officers, it would screen applicants on this roster, starting with the applicant with the highest score; applicants who passed the screening were hired.  Plaintiffs either

---

[7]The parties have briefed whether the State and City Defendants can be considered alter egos such that we should attribute to the State Defendants responsibility for the promotions made by the City Defendants.  The District Court thought legitimate questions of fact existed with respect to this issue, and did not rule on it.  But even if the State Defendants are deemed responsible for the promotions, these promotions, as we will explain, were the neutral effects of the alleged discriminatory acts, and so cannot serve as triggering dates for the statute of limitations.

7

failed the exam or some aspect of the screening process, and sued the State and the City for having violated Title VII.

The District Court dismissed the complaint because plaintiffs had not filed their charge with the EEOC within the statute of limitations – there, 180 days from the promulgation of the list. On appeal, plaintiffs argued that the eligibility roster was a continuing violation of Title VII for as long as it was in effect and, therefore, that their charge to the EEOC was timely because it was filed during the roster's effective period. We rejected that argument, and held that plaintiffs did not allege that Newark "would have followed anything but a neutral, non-discriminatory procedure in hiring from the list." Id. at 1083. The promulgation of the list was the only allegedly discriminatory act, and the continuing effectiveness of the list constituted merely a neutral effect of that act. Consequently, the charge filed with the EEOC was untimely, and we affirmed the District Court's dismissal of the complaint.

In Bronze Shields, we relied on the Supreme Court's decision in Ricks, in which the Court refused to apply the continuing violation theory. Ricks was a professor who had been denied tenure, and was instead offered a one-year terminal contract, after which his employment would be terminated. Ricks, 449 U.S. at 252-53. The District Court concluded that the statute of limitations for filing a charge with the EEOC began on the date Ricks was offered the terminal contract, not, as Ricks had argued, when the terminal contract expired. We reversed, but the Supreme Court reversed us, holding that to

8

determine the timeliness of an EEOC complaint, a court must "identify precisely the 'unlawful employment practice' of which (plaintiff) complains." Id. at 257.

> "In order for the limitations periods to commence with the date of discharge, Ricks would have had to allege and prove that the manner in which his employment was terminated differed discriminatorily from the manner in which the College terminated other professors who also had been denied tenure."

Id. at 257-58. Ricks made no such allegation. The Supreme Court also held that because Ricks' termination was carried out in a neutral, non-discriminatory manner, the statute of limitations began to run when the termination decision was made and communicated to Ricks, "even though one of the effects of the denial of tenure – the eventual loss of a teaching position – did not occur until later." Id. at 258. Applying Ricks in Bronze Shields, we concluded that the promulgation of the eligibility roster was the last allegedly discriminatory act by the defendants. Bronze Shields, 667 F.2d at 1083-84.[8]

Bronze Shields and Ricks compel our rejection of the continuing violation theory

---

[8]We recently applied Ricks in Watson v. Eastman Kodak Co., 235 F.3d 851 (3d Cir. 2000). The plaintiff, Watson, received a letter stating that he was being terminated from his current position, and that he would be terminated from Kodak entirely if he did not find another position at Kodak within one month. Watson filed his EEOC charge within 300 days of his actual discharge, but not within 300 days of the receipt of the termination letter. Applying Ricks, we held that Watson's receipt of the termination letter was the act of discrimination that triggered the 300-day statute of limitations. Even though Watson may have stayed at Kodak if he found another position, his allegation of discrimination was with respect to losing the specific position he had held. Because the termination letter was unequivocal as to Watson losing this position, receipt of that letter was the triggering act. As in Watson, plaintiffs here identify the specific discriminatory act – the design and administration of the exam, and the promulgation of the list – from which the statute of limitations runs.

in this case. The discriminatory act that plaintiffs allege is the design and administration of the exam and the concomitant promulgation of the eligibility list.[9] The neutral use of the list by municipal fire departments is merely the effect of the alleged discriminatory exam. Therefore, the statute of limitations began running on the date that the eligibility list was promulgated.

Plaintiffs' argument that this case is different from Bronze Shields because the plaintiffs in that case failed the exam, whereas Bishop, Flemming, and Brown passed, is unpersuasive. Because these plaintiffs passed, their argument goes, the ongoing validity of the list until its expiration date, and the promotions made based upon it, constitute a continuing violation because plaintiffs are now stuck with their low ranking on that list and have no non-discriminatory avenue by which to seek a promotion. To require them to have filed their EEOC complaints 300 days after the promulgation of the list, but while they still remained on the eligibility list, could result in their being promoted after the filing of their charges and/or their lawsuit – a waste of judicial resources. Better, they contend, to wait until the last discriminatory act – whether that be the most recent round

---

[9]Neither the charge filed with the EEOC, nor the Complaint, allege that the manner in which individuals were promoted from the list when vacancies arose was discriminatory. To the contrary, the Complaint alleges that the "disparate impact of the 2000 examination continues up to the present. On or about July 20, 2002, thirteen additional promotions were made utilizing the defective promotion list." Complaint at ¶ 41 (emphasis added). Only in their Reply Brief do plaintiffs suggest – albeit it without explanation – that the promotions themselves were discriminatory. This suggestion is both belated and bereft of support.

10

of promotions, or the failure to have promoted them when the list expires – to begin running the statute of limitations. While we appreciate plaintiffs' concern for the conservation of judicial resources, that concern does not transform neutral effects into discriminatory acts.

The Sixth Circuit has come to the same conclusion we do. In Cox v. City of Memphis, 230 F.3d 199 (6th Cir. 2000), the plaintiffs were white female police officers who passed a promotions examination, were placed on the eligibility list, but were never promoted. They claimed that the administration of the exam was discriminatory in violation of Title VII, but the EEOC dismissed their charges because they had not been filed within 180 days of the promulgation of the list. The Sixth Circuit evaluated the plaintiffs' continuing violation theory in light of their passing the exam, and concluded that the promotions of others or the failure of plaintiffs to be promoted were the effects of previous discrimination, and not continuing acts of discrimination themselves. The Court emphasized, in response to plaintiffs' argument that the fact that they passed the exam distinguished them from the plaintiffs in Bronze Shields who failed, that

> the mere possibility that one will be hired or promoted despite an allegedly discriminatory ranking does not mean that the failure to promote or hire should be treated as a discriminatory act separate from the original act of discrimination .... the assignment of an allegedly discriminatory ranking is the relevant discriminatory act even where the low ranking is not a "certain prelude" to an adverse employment action.

Cox, 230 F.3d at 205 (quoting Huels v. Exxon Coal USA, Inc., 121 F.3d 1047, 1051 (7th Cir. 1997)). We agree with both the Sixth Circuit's reasoning and its conclusion.

11

### III. CONCLUSION

In sum, we reject plaintiffs' contention that the continuing violation doctrine applies. Plaintiffs do not allege any discriminatory acts related to the selection of names from the eligibility list for promotion. These promotions were neutral, non-discriminatory effects of the promulgation of the eligibility list. Because plaintiffs' EEOC charge was not filed within 300 days of this promulgation, it was time-barred.

The Order of the District Court will be affirmed.

TO THE CLERK OF THE COURT:

Kindly file the foregoing Opinion.

/s/ Maryanne Trump Barry
Circuit Judge

12